<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIM A. BEERS, <br><br> *Plaintiff*, <br><br> v. <br><br> BJ'S WHOLESALE CLUB, INC., NNN REIT, LP a/k/a NATIONAL RETAILERS, LP, INSTACART, DELAWARE VALLEY PAVING, INC., ALL JERSEY MECHANICAL & CONSTRUCTION INC., SNOW SYSTEMS NATIONWIDE, SHIELDS FACILITIES MAINTENANCE, JOHN DOES 1-4 and/or ABC CORPORATIONS 3-4 (fictitious names for the person, partnerships and/or corporations intended), <br><br> *Defendants*. | Civil No.: 2:23-cv-22872 (KSH) (CLW) <br><br><br> **<u>OPINION</u>** |

**<u>Katharine S. Hayden, U.S.D.J.</u>**

**I.     Introduction**

This matter is before the Court on defendant BJ's Wholesale Club's motion to compel arbitration (D.E. 61) and a separate motion to dismiss brought by defendant All Jersey Mechanical & Construction (D.E. 45). For the reasons set forth below, the Court grants the motion to compel arbitration and stays the action pending arbitration.

**II.    Background**

On January 27, 2022, Beers fell in the parking lot of a BJ's Wholesale Club store located at 1 Howard Boulevard in Ledgewood, New Jersey. (D.E. 22, Second Am. Compl. at ¶¶ 9-10.) According to the complaint, as Beers was returning her shopping cart, she "stepped into a large defect in the handicapped parking lot," which caused her to "trip and fall hard to the ground,

1

landing on her face and hands." (*Id.* ¶ 10.) Beers alleges that she sustained severe and permanent personal injuries as a result. (*Id.* ¶ 14.)

Beers was working as a shopper for Instacart, Inc. ("Instacart") at the time of the accident. (*Id.* ¶¶ 9, 16-18.) Earlier that month, on January 3, 2022, she had signed an independent contractor agreement with Instacart. (D.E. 61 & Ex. B.) The agreement includes an arbitration provision, which is referenced throughout the contract and broadly provides:

> **[E]xcept as otherwise provided in this Arbitration Provision, you and Instacart agree that to the fullest extent permitted by law, ANY AND ALL DISPUTES OR CLAIMS BETWEEN YOU AND INSTACART shall be exclusively resolved by final and binding arbitration by a neutral arbitrator, including without limitation any and all disputes or claims BETWEEN YOU AND INSTACART, whether in contract, tort, or otherwise, relating to the formation (including unconscionability and invalidity), existence, breach, termination, enforcement, validity, scope, and applicability of the Agreement, or the Services agreed to herein, or any claim on any basis under federal, state, or local law, which could otherwise be heard before any court of competent jurisdiction.**

[(*Id.* § 9.1 (emphasis in original).)]

"Covered claims" include "breach of any duty owed to you by Instacart," "personal, physical or emotional injury," and "any other tort claims." (*Id.* § 9.3.) According to the text, by signing the agreement Beers expressly "waive[s] [her] right to have any covered dispute, claim, or controversy decided by a judge or jury in court." (*Id.* § 9.1.)

BJ's Wholesale Club ("BJs") comes into the picture because the arbitration provision provides that "[s]ubject to the limitations set forth in Section 9.6, you and Instacart agree that the third party retailers at or in whose premises the Services under this Agreement may be performed . . . are intended third party beneficiaries of this Arbitration Provision." (*Id.* § 9.1.) Further, "all claims or disputes" against a third party retailer "arising out of or related to the Services performed under this Agreement" "shall be resolved exclusively by an arbitrator." (*Id.* § 9.3.)

In the acknowledgement and agreement section, Beers checked that she understood the agreement, "including the Arbitration Provision," and was voluntarily entering into the agreement. (*Id.* at 8.) Though Beers was able to opt out of the arbitration provision until February 2, 2022, she did not do so. (*Id.* § 9.10; D.E. 61 at 12-13.)

**III.     Procedural History**

On October 18, 2023, Beers sued BJs in state court, asserting that BJs caused her injuries by negligently maintaining its premises. (D.E. 1.) BJs removed the complaint based on diversity jurisdiction on December 4, 2023. (*Id.*) After BJs answered (D.E. 8), Beers filed her first amended complaint, adding NNN Reit, LP a/k/a National Retailers, LP ("NNN Reit") and Instacart as defendants (D.E. 11).

On February 7, 2024, BJs and NNN Reit filed an amended answer to the first amended complaint and included a third party complaint against Delaware Valley Paving, Inc., All Jersey Mechanical & Construction Inc. ("All Jersey"), Snow Systems Nationwide, Shields Facilities Maintenance, and John Does A-H and/or XYZ Corps 1-10. (D.E. 15.) Thereafter, Beers filed the operative complaint, adding claims for negligence against the third party defendants. (D.E. 22.) Albeit BJs dismissed its third party complaint (D.E. 79), Beers' negligence claims against the named defendants remain.

On March 6, 2024, All Jersey requested an extension of time to respond, which this Court granted. (D.E. 32, 35.) On March 21, 2024, All Jersey moved to dismiss the operative complaint for failure to state a claim. (D.E. 45.) Beers opposed (D.E. 56), as did BJs (D.E. 62), and All Jersey replied (D.E. 66).

Shortly after All Jersey filed its motion to dismiss, BJs moved to compel arbitration based on the arbitration provision in Beers' independent contractor agreement with Instacart.[1] (D.E. 61.)  Beers did not respond to this motion.

## IV.     Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, strongly favors the enforcement of arbitration agreements, requiring courts "to stay litigation and compel arbitration of claims covered by a written, enforceable arbitration agreement."  *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (citing 9 U.S.C. §§ 3, 4).  The Third Circuit has adopted a two-tiered framework for assessing motions to compel arbitration, instructing courts to confirm that "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement" before granting such motions.  *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 (3d Cir. 2024) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

"The standard by which a court must conduct this analysis can either be under Federal Rule of Civil Procedure 12(b)(6) (motion to dismiss) or Rule 56(a) (summary judgment)."  *Triola v. Dolgencorp, LLC*, 2022 WL 16834579, at *2 (D.N.J. Nov. 9, 2022) (Kugler, J.) (citing *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771 (3d Cir. 2013)).  The court must employ the Rule 12(b)(6) standard if "it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'"  *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).  "But if the complaint

---

[1] On February 26, 2024, Instacart filed a motion to compel arbitration (D.E. 20), which led to Beers voluntarily dismissing her claims against Instacart (D.E. 51).  This Court ordered the dismissal of Instacart and terminated Instacart's motion to compel.  (D.E. 52, 64.)

and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then the Rule 56(a) standard applies. *Id.* Under that standard, limited discovery may be warranted if a factual dispute arises. *Young*, 119 F.4th at 319-20.

BJs submits that its motion should be decided under the Rule 12(b)(6) standard because "the defense of arbitrability is apparent on the face of the Second Amended Complaint," through Beers' assertion that "she was an independent contractor for Instacart." (D.E. 61 at 9.)

However, BJs misconstrues the standard. The inquiry a court must make is whether the complaint plainly mentions or relies on an arbitration agreement, not whether the complaint references a contractual agreement that may have an arbitration provision. *See Matczak v. Compass Grp. USA, Inc.*, 2022 WL 557880, at *2 (D.N.J. Feb. 24, 2022) (O'Hearn, J.) (concluding that the Rule 56 standard applies where "the Complaint plainly does not mention or rely upon the arbitration agreement" leaving the court to look "to the documents extraneous to the pleadings and the respective declarations submitted by both parties to determine whether the parties have agreed to arbitrate this dispute"); *Triola*, 2022 WL 16834579, at *3 (finding that the court "must apply the Rule 56 standard because [the] Amended Complaint does not mention the Arbitration Agreement"). Therefore, because the operative complaint does not plainly mention or rely on the arbitration provision, this Court will apply the Rule 56 standard, and looks beyond the complaint and examines the text of Beers' contract with Instacart.

Under Rule 56, summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). On that

showing, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citing Fed. R. Civ. P. 56(e)). If the nonmoving party fails to meet its burden, summary judgment may be granted against it. *Id.* at 249-50. Here, Beers has not opposed BJs' motion.

V.    **Discussion**

   A. **Motion to Compel Arbitration**

Albeit two motions are before the Court, for reasons set forth below the Court concentrates on the unopposed motion to compel arbitration. To grant a motion to compel arbitration, this Court must first be satisfied that the arbitration provision at issue is valid and enforceable. In making these determinations, the Court will look to ordinary principles of state contract law. *Triola*, 2022 WL 16834579, at *3. "Under New Jersey law, '[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms.'" *Id.* (quoting *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 290 (3d Cir. 2017)). This requires "the party who gives up rights" to "have full knowledge of his legal rights and [an] intent to surrender those rights." *Matczak*, 2022 WL 557880, at *4 (quoting *Skuse v. Pfizer, Inc.*, 244 N.J. 30, 48 (2020)). Further, the New Jersey Supreme Court has explained

> [w]hen the waiver of rights is an agreement to arbitrate employment disputes, courts require some concrete manifestation of the employee's intent as reflected in the text of the agreement itself. Our jurisprudence has stressed that when a contract contains a waiver of rights—whether in an arbitration or other clause— the waiver must be clearly and unmistakably established . . . . Our case law thus requires that a waiver-of-rights provision be written clearly and unambiguously. In an employment setting, employees must at least know that they have agree[d] to arbitrate all statutory claims arising out of the employment relationship or its termination.
>
> [*Id.* (internal citations and quotations omitted) (quoting *Skuse*, 244 N.J. at 48-50).]

6

An arbitration agreement "will pass muster if it, 'at least in some general and sufficiently broad way . . . explain[s] that the plaintiff is giving up her right to bring claims in court or have a jury resolve the dispute.'" *Triola*, 2022 WL 16834579, at *3 (quoting *Frederick v. Law Office of Fox Kohler & Ass'n*, 852 F. App'x 673, 677 (3d Cir. 2021)); *see also Atalese v. U.S. Legal Servs. Grp., LP*, 219 N.J. 430, 444 (2014) ("Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer.").

Here, the Court finds that the arbitration provision's terms are clear and unambiguous. It provides that "any and all disputes" between Beers and Instacart "shall be exclusively resolved by final and binding arbitration" whether in "contract, tort, or otherwise." (D.E. 61 & Ex. B § 9.1.) Further, it contemplates that third party retailers are intended beneficiaries of the arbitration provision. (*Id.*) Section 9.3 defines what covered claims are, and Section 9.6 defines what they are not. (*Id.* §§ 9.3, 9.6.) The arbitration provision also clearly relays that Beers would "waive [her] right to have any covered dispute, claim, or controversy decided by a judge or jury in court" and reiterates that any dispute or claim "will be submitted exclusively to the arbitrator, and will not be decided by any federal or state court." (*Id.* §§ 9.1, 9.2.) The arbitration provision also states that the FAA governs it and provides clear instructions on how to opt out. (*Id.* §§ 9.1, 9.10.) Lastly, reference to the arbitration provision, its terms, and the opt out choice appears repeatedly throughout the independent contractor agreement, including on the first and last pages. (*Id.* at 1, 8.) The arbitration provision thus adequately informed Beers of its terms. *See Triola*, 2022 WL 16834579, at *4; *Matczak*, 2022 WL 557880, at *4-5.

Beers' negligence claim against BJs is within the scope of the arbitration provision. Although the independent contractor agreement is between Beers and Instacart, the arbitration

provision clearly provides "that third party retailers at or in whose premises the Services under this Agreement may be performed . . . are intended third party beneficiaries of this Arbitration Provision" and all claims or disputes against a third party retailer "arising out of or related to the Services performed under this Agreement" "shall be resolved exclusively by an arbitrator." (*Id.* §§ 9.1, 9.3.) BJs is clearly a third party retailer within the meaning of the arbitration provision, as Beers was providing services for Instacart at the time of the accident.

Courts in this district have found that if a plaintiff's claims are plainly within an arbitration provision's scope, non-signatory parties may compel arbitration based on equitable principles. *See Harmon v. Am. Honda Motor Co.*, 2023 WL 4525374, at *5 (D.N.J. July 12, 2023) (O'Hearn, J.) (finding that the plaintiff was "estopped from avoiding her obligation to arbitrate because her claims are plainly within the provision's scope"); *Haskins v. First Am. Title Ins. Co.*, 866 F. Supp. 2d 343, 348 (D.N.J. 2012) (Schneider, J.) ("Under New Jersey law, a non-signatory may be bound to an arbitration agreement under a . . . third-party beneficiary [theory]."); *Rieder Cmtys., Inc. v. Twp. of N. Brunswick*, 227 N.J. Super. 214, 222 (App. Div. 1988) (noting that third party beneficiary status is conveyed when "the contracting parties intended that a third party should receive a benefit which might be enforced in the courts") (citation omitted).

Thus, the remaining question is whether Beers' negligence claim is a "covered claim" under the arbitration provision, and the Court easily finds that it is. Beyond the provision's references that "any and all disputes or claims" between Beers and a third party retailer will be referred to arbitration, Section 9.3 also specifically defines "covered claims" to include "breach of any duty owed to you," "personal, physical or emotional injury," and "any other tort claims."

(*Id.* § 9.3.)  Beers' negligence claim for her personal injuries against BJs as a third party retailer thus squarely falls within the scope of the arbitration provision.

For the foregoing reasons, the arbitration provision is enforceable.  The Court grants BJs' motion to compel arbitration.

**B. Stay Pending Arbitration**

"Section 3 of the FAA provides that issues within the scope of an arbitration agreement shall be referred to arbitration, and that court proceedings shall be stayed" on the application of one of the parties.  *Neal v. Asta Funding, Inc.*, 2014 WL 131770, at *3 (D.N.J. Jan. 6, 2014) (McNulty, J.).  When the parties do not apply for a stay of proceedings, the court has the discretion to stay its own proceedings.  *Id.* at *3-5; *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (noting that the decision to stay litigation among non-arbitrating parties pending the outcome of the arbitration "is one left to the district court . . . as a matter of its discretion to control its docket").

Courts in this district have found that a stay in this context is appropriate "[w]here significant overlap exists between parties and issues."  *Crawford v. W. Jersey Health Sys. (Voorhees Div.)*, 847 F. Supp. 1232, 1243 (D.N.J. 1994) (Brotman, J.) (finding a stay pending the outcome of arbitration appropriate where the claims against the arbitrating defendant "involve many of the same factual and legal issues as those against the other defendants"); *see Neal*, 2014 WL 131770, at *5 (finding a stay appropriate where "[t]he resolution of the arbitration will involve issues overlapping and bearing upon disputes raised in this action"); *Salerno Med. Assocs., LLP v. Riverside Med. Mgmt., LLC*, 542 F. Supp. 3d 268, 282-83 (D.N.J. 2021) (McNulty, J.) (same).  This is to prevent "intertwined claims [from] proceed[ing] simultaneously in court and in arbitration; such a procedure would be rife with opportunities for

9

mutual interference, inconsistent rulings, and general procedural confusion." *Neal*, 2014 WL 131770, at *5.

Here, the Court finds that issues of law and fact in this litigation and the arbitration would substantially overlap because the complaint alleges all defendants were negligent in maintaining the BJs premises, which led to Beers' trip and fall. Defendants Delaware Valley Paving, Inc., All Jersey, Snow Systems Nationwide, Shields Facilities Maintenance, and John Does A-H and/or XYZ Corps 1-10 were initially brought into the action by BJs by virtue of their alleged contractual agreements with BJs. (D.E. 15.) A determination that BJs was or was not negligent in maintaining its premises would be highly relevant to Beers' claims as to the rest of the defendants. As such, the Court finds that Beers' negligence claims as to all defendants are "inextricably intertwined," and a stay is warranted.

## VI. Conclusion

For the reasons set forth above, BJs' motion to compel arbitration is granted, and the action is stayed pending the arbitration's outcome. All Jersey's motion to dismiss is administratively terminated without prejudice, subject to renewal if appropriate. A separate order accompanies this opinion.

Dated: December 23, 2024         /s Katharine S. Hayden
                                  Katharine S. Hayden, U.S.D.J.